So um next page is number 7 3167 Johnston against the Americans Protection Board and Mr. Kramer Thank you, Your Honor. May it please the court, Jacob Kramer for Petitioner Julie Johnston. The issue before the court today is whether the Merit System Protection Board has subject matter jurisdiction over Petitioner's individual right of action appeal in which Ms. Johnston sought protection under the WPA, the Whistleblower Protection Act, after disclosing that a proposed safety management policy would result in dangerous training conditions. Petitioner asks that the board of proceedings on the merits. I'd like to address two substantive points in my oral argument today. First, that the administrative judge and the board applied the wrong standard. Their error in this case was in failing to evaluate Ms. Johnston's allegations from the perspective of a disinterested observer as they're required to do. The result of this was an improper and premature decision on the merits. Second, had they applied the proper standard, a disinterested observer could, in fact, conclude that Ms. Johnston's allegations amounted to a protective disclosure under the WPA. By way of background, Ms. Johnston is employed by the Office of Secure Transportation, which is part of the Department of Energy, and I'll refer to the Office of Secure Transportation as the OST. OST agents are nuclear couriers. They're charged with transporting nuclear materials around the country under heavy guard, and they protect nuclear cargo from assault. As you might imagine, they train constantly in the handling of heavy weapons and in nuclear material, and their training exercises are dangerous and rigorous. They involve live ammunition, explosives, defensive driving, simulated assault exercises under a variety of conditions, including weather conditions from the mundane to the extreme. And there have been, during these training exercises, a series of accidents in recent years. Ms. Johnston has alleged that these accidents were the result of flaws in the risk assessment procedure. Now, the risk assessment procedure is something performed by a safety professional in which that safety professional reviews the training lesson plan to determine whether or not there's a safe level of risk for OST agents. Typically, such evaluation was in the past done by a safety and occupational health manager, and that's the petitioner's title. There are two safety and occupational health managers within OST, and Ms. Johnston has served in that position since October 2001. She has extensive experience designing and managing safety programs for the United States Army. She has a master's degree in industrial technology safety, and she's currently no longer on active duty but is a chief warrant officer in the Army Reserves. But since leaving the full-time Army, Ms. Johnston has worked at OST and has done her best to implement training programs based on her experience in the Army that have a level of flexibility sufficient to address the concerns of a paramilitary organization like the OST. Mr. Crane, what remedy is Ms. Johnston requesting? Ms. Johnston is requesting a reversal and a remand to the board. Oh, I'm sorry, Your Honor, on the merits... But let's just assume, let's skip all of this and assume that there's jurisdiction. What remedy is she seeking in her actions before the board? Ms. Johnston is seeking, first of all, there have been adverse employment actions against her as a result of her... Was she reduced in grades? She was taken, part of her responsibilities were reviewing training lessons, and under a performance plan that was issued after her disclosures, those responsibilities were taken away. And Ms. Johnston is seeking to reverse the course of this proposed policy and ensure that there continues to be adequate safety risk assessment and OST training. So there's no change in grade or pay, is that right? That's correct, Your Honor. But there has been a reduction in her job responsibilities, and she's been subject to discipline as a result of these disclosures. She's asking the MSPB to have her job description changed? Well, she's asking the MSPB to remedy the adverse employment actions that have been taken against her, including the reduction of... I'm trying to figure out what the adverse action is that she was given responsibility. Well, this responsibility was taken away from her. She received a counseling memorandum, from her supervisor, and she received a reprimand. She was told that her reputation had been irreparably damaged by her disclosures, and she's seeking protection from this sort of action and the ability to move forward in her job. Does she want her record, her personnel record, changed or cleared up? Yes, that's part of it, Your Honor. What is all of it? Well, Ms. Johnson's hope here is that... I think it would be good to know. I think it's interesting. You know, to go through the gyrations to figure out the jurisdiction, and then figure out, and then they get down there and there's nothing to give. To reevaluate the entire program is not a proper remedy for this kind of action. It has to do with something that affects her directly, and what are specifically all of the things, or any of the things she wants fixed? Ms. Johnson traditionally in her job has served as the safety and occupational health manager. The proposed policy would delegate her job functions to individuals within the OST who have been newly appointed and who have less training and expertise than her, and her effort here is to maintain her job responsibility and to reverse the reduction in her responsibilities, including the review of training exercises. Well, wasn't that as a result of the implementation of the policy? Well, the policy, as far as I know... Not as a reaction to her discussion about the policy, but the changes that were made, basically, were an implementation of the policy. In fact, Your Honor, it's our understanding that the policy has not been implemented. It remains in the proposal state. Ms. Johnson's performance plan was changed after she made these disclosures to the Inspector General of the Department of Energy, including the disclosure that this policy would inadequately delegate safety training responsibilities to command safety representatives who are the new personnel to whom Chief Jekson is carrying this responsibility. Well, why would that be really within the scope of just a necessary disagreement on the policy, you tell us? Well, the issue, Your Honor, is that Ms. Johnson has disclosed what she reasonably believes to be a substantial and specific danger to safety, in particular the safety of OST agents who are involved in this training, and the reason for that is that the policy would take away from her this responsibility, and it would take away from her other colleagues at the same level this responsibility and delegate it to individuals who lack the type of expertise that's necessary to make adequate evaluations of training exercises. Why isn't that a disagreement merely on policy at that point? Well, because, Your Honor, there have been in the past accidents from inadequate safety review of training exercises, and Ms. Johnson posits that that would happen again, and the board found, really stepping into the merits and beyond the jurisdictional issue, that Ms. Johnson's complaint here was not even just a disagreement on policy. The board concluded that Ms. Johnson had simply taken these actions to protect herself. Now, the point here is that the board went beyond the objective test on jurisdiction that is required to apply under this Court's precedent and looked at Ms. Johnson's motives, and her motives are relevant only to her subjective view of this policy and to her credibility, neither of which is in play. It wasn't just that. The letter that she wrote, after she determined that her responsibilities were changing, really complained only about the fact that there had been a restructure. You also didn't point out that two years earlier, there might have been some inadequacy in the security of the procedures. Yes, Your Honor. Ms. Johnson's letter was followed up by an interview that she had with the Inspector General, which is recorded in a memorandum written by the individual who took the interview, and that refers specifically to her concern that safety management by inadequately trained employees would result in accidents. It goes beyond an effort to protect her job, and it's easy, as the Administrative Judge did, to focus on and conclude that she was simply trying to protect herself. But by attempting to ensure that these safety management responsibilities were vested in the correct person within the OST who could do them well and who could protect the agents in these dangerous training exercises, that was part of her appeal. But she was one of the correct persons to exercise that authority. She was, Your Honor. Why is that really basically a complaint, not of mismanagement, but one in which the policy directive would have lowered her position, not because of what she complained about, but she knew about the policy before she started complaining about it, and recognized that the aspects of what the result of that policy would be a reduction of her responsibilities? That would have been the result of the policy, and that's the problem, Your Honor. It's not that Ms. Johnson would have suffered a reduction in her responsibilities. She would have. It's that those responsibilities would be placed somewhere else, and that they would be placed in the hands of individuals who do not have adequate training expertise in safety management, and who would then be charged with reviewing the safety aspects of very dangerous training exercises in a way that would lead to a very substantial and specific danger to the safety of the individuals who participated in these training exercises. Does the White case control the outcome of this? The White case, there have been several, Your Honor. I'm speaking of one specifically, the one decided on December 15th. It's at 391 Fed 3rd, 1377. I understand there have been a number of White cases. Yes, Your Honor. I believe the White case you're referring to was a decision on the merits, and it's cited by the respondent in a respondent's opposition brief to allege that it was important for the Board to consider the merits of Ms. Johnson's claim, because I believe the word in White is that they should consider the facts essential to the claim and apply them to the standard. And the issue here is that the Board made a decision on the merits before granting Ms. Johnson any discovery, before granting her an opportunity to present her case, and before even giving her an opportunity to review the agency file. The White case and the citation to the White case demonstrates the error, which is the Board weighed evidence, the Board determined Ms. Johnson's credibility, drew inferences about her motivations here, when all that was required was to consider whether a disinterested observer viewing these facts presented to Ms. Johnson these prior accidents and dangerous conditions in training, and the Board was required to resolve doubt and ambiguity in Ms. Johnson's favor, and it didn't do so. It rendered a decision that was premature, and for that reason we request reversal and a remand on the merits. Let's thank your rebuttal, John. Thank you, Your Honor. Mr. Kearney. Let me please the Court. I'd like to begin by briefly addressing the White case. In White, the Court spoke about the law generally and then said that we turn now to the merits, or words to that effect. It was not a merits decision. The issue there was whether the petitioner had non-frivolously alleged, I believe it was gross mismanagement in that case. So the Court used those words, but it was not a merits decision beyond the question of frivolousness. It was just turning to the case at hand. But that was to establish non-frivolous allegations for jurisdiction. Correct, Your Honor. So that was the issue, which is the issue here. I'd like to begin by addressing the main point that the AJA based its decision on, whether the petitioner made a protected disclosure of a substantial and specific safety matter. The disinterested observer test also requires that the disinterested observer consider other essential facts. I'd like to review a couple of the essential facts that were known to the petitioner at the time. The new personnel who were brought in to review the safety plans, among other duties, were experienced OST agents. So they had been performing these functions for quite some time and were certain to be aware of the potential safety pitfalls involved in these activities that they engage in. These new people would be supervised by the new GS-14 who would be brought in. He would train them and certify them to conduct their duties. So these were not just people off the street coming in and making important safety decisions. These were experienced agents who were also going to be supervised and trained. I think in terms of analyzing whether the petitioner has made a non-frivolous allegation, the decider can also look to the essential facts known then to the petitioner. The petitioner recites several of these facts in her own disclosures and the other facts are also included in policy 7.04A itself. I think these are undisputed facts that the GS-14 was going to supervise these people. They were going to be hiring former OST agents. So I think this adds some background to the allegation that untrained personnel were going to be performing these functions. That while they may not have prior employment history as safety professionals, they nonetheless knew the job and were going to be supervised and trained in this particular safety function. With the non-frivolous allegation for the jurisdictional issues, does it test really whether a reasonable person looking at the new policy would determine there would be a safety and reckless disregard for public safety at that point? It's whether a disinterested observer with knowledge of the readily available facts could conclude that this aspect of the policy posed a substantial and specific danger to health and safety. That would be the standard. So a reasonable person test would apply for the initial determination of jurisdiction? Yes, sir. I've always been troubled by this. If there's no jurisdiction, how could the administrative judge even decide whether or not this was whistleblower? There has to be threshold jurisdiction of the question, upon which then the AJ and the board can say you haven't met the criteria of whistleblower. I think the board as a court has jurisdiction to determine whether it has jurisdiction. So that this complaint was brought before the board, the board will examine it to determine whether it has jurisdiction. It has jurisdiction to determine whether or not this is a whistleblowing, this meets the criteria of whistleblowing? Yes, Your Honor. Not to determine, in which case, having held as this AJ did, that it did not meet the criteria of whistleblowing. It's not a decision on the merits, not jurisdictional? It is a finding of a lack of jurisdiction, Your Honor. We know that the Supreme Court has recently been going to great effort to try and somehow stem this tide of calling things jurisdictional after they're fully explored on the merits. Well, this case was certainly not fully explored on the merits. The whistleblowing aspect had to have been. If it wasn't, then there was no basis for dismissing it for lack of jurisdiction. But Your Honor, there were no witnesses called, there was no credibility determinations made, there was no determination as to whether the petitioner reasonably believed the disinterested observer test was used. And in accordance with the court's previous holdings, the administrative judge can look to facts known to or readily ascertainable by the person making the disclosure and making that determination. So I think the court's decision, the AJ's decision, was certainly in accordance with this court's decisions as he knew them then. There are several other issues presented by the petitioner. There's the question of whether this was gross mismanagement. And I think the panel discussed that briefly earlier. I think really this is a policy dispute. The petitioner takes one view on it, the agency takes another view. You're saying that the board has jurisdiction to decide whether this was or was not gross mismanagement? No, Your Honor. The board has jurisdiction to determine whether the petitioner non-frivolously alleged gross mismanagement. Okay, all right. I may have used some shorthand. I apologize if I used a little shorthand there. Upon which then the AJ decided that this was not a violation of gross mismanagement. The AJ actually did not address the gross mismanagement issue. I explained in my brief that I think this issue was waived. It was raised in a couple of sentences in the initial appeal, but it was not presented in either of the submissions that the petitioner gave on the question of jurisdiction. So it was not addressed in the initial decision. So my argument is that it was also not presented to the board either as a new issue or as an error by the administrative judge. Does it have to be presented to the board at the re-hearing stage? No, Your Honor. If the court determines that it was presented to the AJ, if it's presented to the AJ, regardless of whether it goes to the board, this court can review that question, Your Honor. The other question regards the petitioner's allegation that the AJ looked at the motive and weighed the evidence. I don't think that's really the case. If you look at the initial decision, the administrative judge took note of the fact that the petitioner made a lot of allegations regarding the impact of this policy upon herself. And the judge said, that is not whistleblowing, and then just moved on. He did not say, and therefore, I don't believe her other allegations. He just said, that is not whistleblowing, and then moved on to the training issue, and said, that is not whistleblowing as well. There was no crossover there. But what about her later allegations of the safety violations? The administrative judge addressed the safety violations and said that they were neither specific or substantial, and concluded that she had failed to make a protected disclosure, and that the board, therefore, did not have jurisdiction over the case. Well, but that's very hard to distinguish, isn't it? If, in fact, they were safety violations, how could that were disclosed? I'm sorry, you're talking about... If it was inspected, then how can one say that wasn't protected? Or that that wasn't an allegation of a mismanagement? Well, in terms of safety, disclosures have to be substantial and specific to qualify as whistleblowing. Is it specific? Well, the administrative judge concluded that they were not, that really what the petitioner was alleging, that any number of dangerous activities complicated by any number of weather phenomena could perhaps result in an accident. Well, it's not really, at least as the AJ concluded, not specific. It was specific, wasn't it? It was specific as to time, exactly what happened, what the injuries were? Oh, the prior accidents. Okay, Your Honor, I'm sorry, I thought you were talking about... The prior accidents. Well, the prior accidents were also between two and four years old, and they were well known to the agency and had been investigated by the agency. So this was not the disclosure of a new matter, this was a disclosure of a matter that had already been reported and investigated. It's not a matter of jurisdiction, is it? Are you saying that if the mismanagement is two years old, there's no jurisdiction to review it? I'm not saying two years...  I'm not saying that two years alone is sufficient to disqualify a matter, but something that's two to four years old that has already been reported and investigated by the agency is not a new matter, and therefore it would not qualify as a safety... Since the whistleblowing statute is about, isn't it, to go outside of the agency if in fact an employee thinks the agency has committed gross mismanagement or the other aspects of the statute? Yes, Your Honor, but I believe that if it's a matter that has already been widely disclosed, it's not at the disclosure of a new matter and therefore would not qualify as a whistleblower. Did you know that wasn't explored as to how widely known these accidents were? In the petitioner's submissions on jurisdiction, they did not allege that the training accidents from 2002 and 2004, that her discussion of those constituted whistleblowing, but she was saying that those are background information that type of thing could happen again. So her argument was, if you put these people in these safety positions, the accidents that occurred in the past could recur. So jurisdiction depends on whether the accidents were background information or something being reported for the first time? I think regardless of whether the court looks at that, the information of those prior accidents as background information or attempted disclosures, it wouldn't qualify as a disclosure under the WPA. And therefore there's no jurisdiction to look into it? Well, the court has jurisdiction to review the board's decision on that matter, but I believe that the AHA's conclusion that the board lacks jurisdiction in this case is correct. It's not our jurisdiction that's being challenged, it's the board's jurisdiction. Yes, Your Honor. You know, I think that as I said before, these training accidents that occurred in the past were not raised by the petitioner in her submissions on jurisdiction. So they are waived. To the extent that the court determines that they are not waived, it is our position that safety matters that are several years old, that have already been reported and already been investigated, are not the type of new material that the WPA would impose. If they went to the merits, they certainly could bring these up as suggesting a pattern that this is not a pure regular thing, maybe work themselves out. Correct, Your Honor. There's no difficulty with the petitioner saying, you know, we've had these accidents, car accidents or whatever in the past, and if you put this person in this position, those things could happen again. That's perfectly fine. Mr. Carney, with respect to the allegations for non-privileged aspects in the complaint, normally we would look at those as if it was in a civil court action and taken as represented as being true. Why is it the same type of an approach used in the boards when the allegations are made? Why would they be accepted as being true at that point, for jurisdictional purposes only? I think the board accepts the petitioner's allegations as true. What the board does not accept as true is her interpretation of what those factual allegations mean. So the board would accept as true that these new personnel are being put in a position where they're going to be reviewing safety plans. That's what she alleged, and that's true for purposes of this analysis. She also alleged that the use of training personnel would create safety problems. Yes, Your Honor. Why can't that statement be accepted as true for jurisdictional purposes? Well, the question remains whether the safety problems are substantial and specific. And the administrative judge found that they were neither. So somebody alleged with a certain degree of specificity that the safety issues would cause A, B, C, D, and E that would be sufficient for jurisdictional purposes? So you're saying it's a lack of specificity in the allegations of the complaint? There certainly has to be factual allegations that support the conclusion that there is a significant safety hazard. Yes, more specificity would increase your chances of alleging a non-frivolous protected disclosure. Well, we have a much more liberal aspect than the civil rules of procedure which for allegation purposes are accepted as true and the allegations are accepted as true and proceed forward on the issue of jurisdiction and then go to the merits. Well, Your Honor, in a civil case if a petitioner says that I ingested substance X and it caused a variety of medical problems that might be enough to get the case going. But that's not what we're talking about for jurisdictional purposes. If I make my allegations of jurisdiction of diversity of citizenship, for instance, for the jurisdiction district courts and that's taken as true unless during trial it's proven that there is no diversity and then lacks jurisdiction. Well, I think in this case, Your Honor, the administrative judge followed the procedures that have been set forth by the court that he looked at the allegations and determined that that they were not substantial and specific and did not therefore meet the standard. But there was no acceptance of them as being true as alleged. There was a question as to whether or not they were true. In a way as to the issue of jurisdiction. I think what was not accepted as true, perhaps, is the conclusion, not the factual allegations. The factual allegations that this person will be doing safety reviews is accepted. The analysis that therefore there is a substantial and specific danger to health is something that the board makes on its own. It doesn't necessarily rely on the interpretation of those facts offered by a petitioner. Okay, any more questions, Mr. Kramer? Any more questions? Okay, thank you. The court has no questions. Thank you very much. I ask you to please affirm the court's decision. Mr. Kramer. Yes. Having extracted my thoughts from careful consideration of jurisdiction and thought again about remedies, what Ms. Johnson asks for in this case is to have her record cleared to be reinstated to her previous job duties and, if appropriate, to be retrained and reassigned to a different position to escape the impact that these disclosures have had on her career at the OST. There was some discussion during the respondent's argument about the proper standard here, and it is confusing, and it was confused by the administrative judge. The question here is whether Ms. Johnson made non-frivolous allegations of a protected disclosure. Whether there is a protected disclosure depends on whether she had a reasonable belief either that the facts before her suggest a substantial and specific danger to safety or gross mismanagement. Now, this question is considered twice in the MSPB process. First, on the jurisdictional stage, which is where we were here, and at the jurisdictional stage, the rules are, as set forth by the MSPB in this court, that the allegations are to be taken as true. And if those allegations are proven, the question is if those allegations are proven, would they establish jurisdiction? That's not the question that was asked in this case. The question that was asked in this case by the administrative judge was whether Ms. Johnson was credible and whether or not she had, in fact, on the merits, established a substantial and specific danger to safety. Now, we never needed to get that far. The question was a threshold matter, and it's telling that the board now argues that it should have been considered with knowledge of the essential facts. That's a quote from the LaChance case, which, again, is a decision on the merits. Now, the second time the board considers this question is after hearing and after discovery and as part of the proceedings on the merits, because the first thing Ms. Johnson is going to have to establish when she gets back to the board is that there's jurisdiction by preponderance of the evidence. But she's been asked to establish that now in the dark without the benefit of discovery at this very early stage, and that's the error. I'd also like to address the point earlier about White. White is a gross mismanagement case, and there's two claims in this case. One, it's a substantial and specific danger to safety. Two, has there been an allegation of gross mismanagement? Even if the court finds that this is simply a disagreement on policy, the fact remains that there's a substantial and specific danger to safety disclosed by Ms. Johnson to her supervisors, to the inspector general, to the Office of Special Counsel, and then again in her submissions to the administrative judge at the board. I see my time has expired. Thank you. Yes, we understand the issue. I hope you do. Mr. Cramer, Mr. Curtis, thank you. The case has taken its submission. Thank you.